ANTONIO MORELLO, PETITIONER-RESPONDENT, v. BALDANZA BAKERY, INCORPORATED, RESPONDENT-APPELLANT, v. RAYMOND F. MALE, COMMISSIONER, DEPARTMENT OF LABOR AND INDUSTRY AS TRUSTEE OF THE TWO PERCENT FUND, RESPONDENT - APPELLEE.

Monmouth County Court
Law Division

Decided July 31, 1968.

*Mr. Thomas F. Shebell, Sr.,* for petitioner-respondent.

*Mr. Joseph D. Haggerty* for respondent-appellant (*Mr. John W. Taylor,* attorney).

*Mr. Lawrence Moncher,* Deputy Attorney General, for respondent-respondent (*Mr. Arthur J. Sills,* Attorney General of New Jersey, attorney).

McGOWAN, J. C. C. This is an appeal from the Workmen's Compensation Division pursuant to *R. R.* 5:2–5(*d*). The appeal is taken by the respondent Baldanza Bakery, Inc. (Baldanza) from a denial by the judge of compensation of petitioner's eligibility for benefits from the Two Percent Fund. More specifically, Baldanza seeks a reversal of a determination that petitioner's pre-existing condition of illiteracy is not a preexisting condition within the intendment of *N. J. S. A.* 34:15–95. Both petitioner and the Attorney General, who represents the Two Percent Fund, propound the theory that illiteracy is not such preexisting condition. . All parties have stipulated that petitioner is totally and permanently disabled, and sustained an injury to his left arm, suffered on July. 17, 1961, while in respondent's employ as a baker's helper.

Petitioner was born in Italy in 1933 or 1934 and came to the United States in October 1959. He attended school in Italy but did not finish the second grade. He is unable to read or write English and only a little Italian. He has not become a United States citizen nor has he attempted to formally educate himself in the English language. Upon his arrival in the United States, petitioner obtained a job as a mason's helper for about two weeks and then began to work for respondent Baldanza until the accident.

The Second Injury Fund Act, also known as the Two Percent Fund, requires that a pre-existing condition renders a petitioner permanently and partially disabled. The portion of *N. J. S. A.* 34:15–95 at issue in this case provides:

"* * * persons totally disabled, as a result of experiencing a subsequent permanent injury under conditions entitling such persons who had been permanently and partially disabled from some other cause * * *."

The sole question before this court, then, is whether or not total illiteracy in English and partial illiteracy in Italian is a permanent and partial disability as to come within the provisions of the statute. As a concomitant of this question it was necessary to determine whether the petitioner suffered from any condition which would preclude his ability to learn English. A remand was ordered for this purpose. At the hearing upon remand to determine whether or not petitioner had an underlying psychological or neurological disorder, a number of experts testified. Interviews had been conducted with petitioner through interpreters, and this somewhat detracted from the specialist's conclusions since much of the tests administered were admittedly peculiarly adapted to English language responses. As the result of the testimony adduced both at the original hearing and the hearing on remand, I find that petitioner is not suffering from a preexisting psychological or physiological disorder which gives rise to illiteracy.

I find that petitioner's intelligence quotient is somewhere between 64 and 90. However, due to his inability to speak or understand the English language, a standard deviation, or margin of error, of about 15 points must be considered. Therefore, petitioner may be classified as falling on the lower limit borderline of the normal I.Q. classifications. None of the experts testified that as the result of some psychological or physiological disorder petitioner's learning ability was impaired to the extent that learning would be impossible. No testimony was offered describing brain damage or abnor-

malcy. Dr. Marvin Metsky, the clinical psychologist called by Baldanza, was of the opinion that petitioner was of limited intellectual ability, functioning within the borderline-defective range. This diagnosis concurs with my finding that no psychological or physiological syndrome exists, but rather that petitioner falls within a low intellectual plane.

Petitioner was born in Italy where he attended elementary school. He repeated first grade three times, second grade twice, and then quit. He received no more formal schooling at any time. This period was dominated in Italy, and especially the locale in which petitioner grew up, by World War II, and it is a reasonable inference that the turmoil in his country greatly affected his learning experiences. However, petitioner has retained those reading abilities of the second grade, being able to read Italian on a second-grade level. Thus it appears that the petitioner is not unable to learn English as the result of a preexisting condition. Inability to read and write cannot be confused with inability to learn to read and write. The inability to learn may be included within permanent and partial disability. This, I have found, is not the situation before me. Intellectual failure arising from other causes does not appear to fall within the intention of *N. J. S. A.* 34:15-95.

Concluding that no disorder exists, the broader question remains to be decided, whether illiteracy is a preexisting condition within the intendment of *N. J. S. A.* 34:15-95. This question has not been passed upon by any other courts of New Jersey, but no real problem is presented for solution. The statute and its forerunners, which are essentially the same, envision some permanent and partial disability from some cause other than the accident which renders the petitioner totally disabled and for which he is making his claim. The "intent [of the act is] not to impose any greater obligation upon an employer who hires or employs a person previously injured than if he had hired a person not so injured." *Richardson v. Essex National Trunk and Bag Corp.,* 119 *N. J. L.* 47, 53 (*E. & A.* 1937). I categorize the illiter-

acy and low intellectual ability as a personality trait of the individual employee and not as conditions of disability.

Petitioner has in the past been able to secure jobs both as a mason's helper and as a baker's helper. While neither job requires a high degree of skill, each is not totally unskilled and each requires some nominal amount of training. Petitioner's lack of education and illiteracy did not preclude him from securing and adequately fulfilling those jobs and acquiring their related though minimal skills.

Nowhere has a legislative intention been found which extends the preexisting condition to illiteracy. With the great number of immigrants arriving in the United States daily, the interpretation of the statute cannot realistically and practically be extended to cover such a situation as this. For this court to interpret a statute so as to greatly broaden coverage afforded by a governmental agency and fund, would be to wrongfully tread upon an area exclusively within the legislative domain. It appears that the legislative intent is to include human ailments rather than sociological and intellectual problems of the employee.

The case of *Belth v. Anthony Ferrante and Son, Inc.,* 47 *N. J.* 38 (1966), is particularly helpful in an attempt to discern the intention of the Legislature. In that case the Supreme Court of New Jersey held that an orthopedic condition resulting from nonwork-connected accident which the employee brought to his employment was not to be deducted from the overall percentage of disability which existed after work-connected accidents. Justice Francis in a lengthy footnote (at page 51) sets out, among other things a bill and amendment which had been pending in the Legislature in 1966. This legislation would greatly broaden Fund coverage. As to previous permanent disability, the amendment defines the phrase as "any previous permanent disability, regardless of cause or type which is or is likely to be a hindrance or obstacle to employment." Thus, a clear legislative expression is presented that the condition before us here is not within the terms of the act as it is presently constituted.

Baldanza and its medical expert, Dr. David J. Flicker, suggest apportionment of disability between it and the Fund. Although this may be an equitable method of resolving the dispute, it does not appear to be authorized under the applicable statute. Furthermore, any apportionment by the court would be mere speculation and therefore impractical. The *Belth* case, *supra,* is also dispositive of this issue. Justice Francis said:

"In our judgment, the problem of apportionment of an employer's liability for payment of benefits in cases such as the present one, in the light of legislative history and administrative precedent in the Division of Workmen's Compensation and in the courts, ought to be left to the Legislative branch of government." (at *p.* 50)

The footnotes in *Belth* case, at *page* 51, also cite bills which if passed would provide for the apportioning of the liability for disability in certain cases arising out of a second accident between the employer and the Fund. Once again, this court must take the law as it now exists and wait for legislative action to bring about the requested change.

Respondent cites *Rodriguez v. Michael A. Scaluorchio, Inc., 42 N. J. Super.* 341 (*App. Div.* 1956), certification denied 23 *N. J.* 140 (1957), and *Lightner v. Cohn, 76 N. J. Super.* 461 (*App. Div.* 1962), for the proposition that an employee's background, limited education and inability to speak or understand English are contributing factors in his unemployability and his total disability. There is no doubt that this is the proper interpretation of those cases. In *Rodriguez,* the claimant was a nonEnglish-speaking Puerto Rican, of limited intelligence, who lost an arm in the course of his employment as a garbage collector. At the time each case was argued and decided, *N. J. S. A.* 34:15–95 was in existence, but possible inclusion under its terms was never raised as an issue. I therefore find that although illiteracy may be included as a factor in an employee's overall disability, it is not within the ambit of *N. J. S. A.* 34:15–95.

The question of counsel fees for petitioner's attorney was raised at oral argument. The attorney submitted a memorandum of law at the court's request advancing the proposition that he is entitled to a reasonable fee on appeal by virtue of the fact that it was imperative to file an appearance to protect his client's interest. Baldanza has not yet had a full opportunity to respond, nor has each party had a chance to be heard on oral argument. Therefore a date will be fixed when the matter of counsel fees and other allowances suggested will be heard.